UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NADIA BAZZI,

        Plaintiff,

v.

YP ADVERTISING & PUBLISHING,
LLC,

        Defendant.

_____/

Case No. 15-10741

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

U.S. MAGISTRATE JUDGE
ANTHONY P. PATTI

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
STRIKE [40] AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
[32]**

Plaintiff, a biracial (African-Lebanese) woman, is an employee of Defendant

and a former participant in Defendant's program for aspiring managers. She

temporarily filled a managerial position during a manager's leave of absence, but

she has never been promoted to a managerial role. Plaintiff brings claims for race

and sex discrimination under Title VII and Michigan's Elliott-Larsen Civil Rights

Act (ELCRA), claiming she has been denied promotion due to her race and/or

gender. She also brings a retaliation claim under ELCRA, claiming that Defendant

retaliated against her after she filed a charge of discrimination with the Equal

Employment Opportunity Commission (EEOC).

On March 15, 2016, Defendant filed a Motion for Summary Judgment
[Dkt. #32].  On April 26, 2016, Plaintiff filed a Response [38], to which Defendant
filed a Reply [41] on May 10, 2016.  Also on May 10, 2016, Defendant filed a
Motion to Strike [40], asking the Court to strike various evidence submitted by
Plaintiff with her summary judgment response and to award Defendant its fees
incurred in filing the motion.  Plaintiff filed a Response [42] on May 24, 2016, and
Defendant filed a Reply [43] on June 2, 2016.

At the conclusion of a hearing held on June 29, 2016, the Court took the
motions under advisement.  The Court invited Defendant to submit a letter to the
Court by July 1, 2016, in response to Plaintiff's counsel's oral argument
concerning a previously unmentioned case, *King v. Enterprise Leasing Co. of
Detroit*, No. 03-71778, 2007 WL 1806208 (E.D. Mich. June 21, 2007)
(unpublished).  The Court received such a letter from Defendant by e-mail on July
1, 2016.

For the reasons stated below, Defendant's Motion to Strike [40] is
**GRANTED** with respect to exhibits 1, 3, 5, 6, 10, 11, 14, 24, 25, and 26 to the
affidavit Plaintiff executed and submitted with her summary judgment Response
[38], and otherwise **DENIED**.  Defendant's Motion for Summary Judgment [32] is
**DENIED**.

### FACTUAL BACKGROUND

Plaintiff Nadia Bazzi was hired by Defendant YP Advertising and Publishing's predecessor, AT&T, in September 2011.  Plaintiff was originally hired as a telephone sales representative at AT&T's Southfield, Michigan, call center.  Each team of telephone sales representatives reported to an Area Sales Manager (ASM).  Each ASM, in turn, reported to one of two Sales Operations Managers (SOMs).  The SOMs, in turn, reported to the General Manager (GM).  Eugene Sieders was the GM at the Southfield call center when Plaintiff was hired, and he remained in that position until he transferred elsewhere in late 2013 or early 2014.  SOM Scot Sloan was then promoted to GM to replace Sieders.

Some months after Plaintiff was hired, ASM Christa Dudzinski nominated Plaintiff to participate in a new Aspiring Manager Program (AMP), and Sieders approved her participation.  AMP participants were groomed for potential promotion to ASM positions.  In June 2012, an ASM named Beverly Tucker (a Black woman) took a leave of absence.  Plaintiff was approved to fill in for Tucker as an Acting ASM.  As Acting ASM, Plaintiff reported to SOM Anthony Belcher.[1]

Melissa Hooven, Defendant's Vice President of Talent Acquisition, has executed an affidavit in which she describes a formal mechanism used by Defendant to process internal job applications.  According to Hooven, all ASM

---

[1] Belcher resigned in January 2014.

positions and other management jobs are posted on a YP job website to which all employees have access. She states that Defendant formerly posted jobs on an AT&T job site instead. She does not expressly state when Defendant transitioned from the AT&T site to the YP site, but she states that Defendant has been posting jobs to the YP site since October 2012. She does not address when or how Defendant informed employees about the application process or about the transition between the AT&T and YP job sites.

Defendant posted seven ASM openings on the YP job site between October 2012 and September 2013. Plaintiff did not apply for any of these openings through the YP job site. The openings were filled by the following employees, all of whom are white: Sabrina Chandler, Nicholas Beaumont, Joseph Penkala, Erena Symchych, Steven Page, Tiffany Sebring, and Ryan Baumgartner.

Plaintiff states in her affidavit that during her time as Acting ASM she asked management for a link to the website that she should use to apply for management positions, and in response she was given a link to the AT&T job site rather than the YP site. Similarly, she testified at her deposition that on several occasions during her time as Acting ASM she asked unspecified people to direct her to the site she should use to apply. She states in her affidavit, as she testified at her deposition, that she did not know how to access the YP job site until corporate headquarters sent a mass e-mail on the subject in 2013. She further states that access to the YP

job site required a YP user ID, and that such IDs were not distributed to all sales representatives until 2013.

On September 12, 2012, GM Sieders forwarded Plaintiff an e-mail concerning an ASM opening in Georgia. On September 19, 2012, Plaintiff e-mailed SOM Belcher her resume for the Georgia position, thanking him for his assistance in applying for the position. Plaintiff was interviewed by phone for the position by a manager in the Georgia office. The position was not filled because the Georgia call center shut down.

Plaintiff testified at her deposition that sometime between July and November 2012 (while she was serving as Acting ASM), Belcher and Sieders invited her to e-mail her resume to them for consideration for a Southfield ASM position that had not yet been officially posted. She testified that between late September and November 2012, she asked Sieders if she could interview for this position, and he declined to interview her, saying that he had already tentatively chosen someone to fill the position. Belcher states in his declaration that he has no record of Plaintiff e-mailing him to informally apply for any Southfield ASM position.

In early November 2012, Belcher informed Plaintiff that Beverly Tucker, the ASM for whom Plaintiff was filling in, had returned from leave. Plaintiff states in her affidavit that Belcher informed her that she could not transition into a

permanent ASM position at that time because there was only one ASM opening,

and Sieders had already selected Nicholas Beaumont to fill it.  However, according

to records that Defendant submitted as Exhibit 12 to its Motion for Summary

Judgment, both Beaumont and Sabrina Chandler were hired as ASMs on

November 27, 2012, to fill openings posted on the YP job site on October 11,

2012.  Belcher told Plaintiff that because she could no longer serve as Acting

ASM, she could return to her former position as a telephone sales representative or

transfer to a position as an Account Executive, with largely the same job duties, in

the Customer Development Center (CDC).  Plaintiff accepted the position in the

CDC.

Plaintiff states in her affidavit, as she testified at her deposition, that Sieders

approached her on November 19, 2012, and asked why she did not apply for an

ASM opening that had just been filled.  Plaintiff responded that both Belcher and

Sieders had told her there were no ASM openings, and that she did not know how

to apply.  Plaintiff asked if she could still apply, and Sieders responded that she

could not because he had already chosen the applicant to promote.  Later that day,

Sieders announced Sabrina Chandler's promotion to ASM via e-mail.

Plaintiff filed a charge of discrimination against Defendant with the EEOC

in June 2013.  Later that month, she returned from short-term disability leave.  Her

team's seats had been moved while she was on leave.  Plaintiff's new seat was

separated from her team, in a location she found undesirable due to the level of noise.  She asked to move her seat, but Defendant did not grant her request until after she submitted a formal request for accommodation, with a doctor's letter. Plaintiff testified that employees usually did not need to submit such formal requests for seat changes.

Plaintiff also testified that when she returned from short-term disability leave in June 2013, she was not returned into the "rotation" of account assignments, as she should have been.  This failure caused her to lose some income.  Sieders initially refused her request to be returned to rotation, citing concerns with her performance.  Plaintiff testified that in August 2013, Sieders admitted that he was mistaken and said that he would take action to have Plaintiff returned into rotation.  She testified that she told Sieders she believed the rotation failure and seat relocation had been motivated by her EEOC charge, and that he responded by saying he did not want to pinpoint the cause.

Plaintiff testified that within a month after she filed her EEOC charge, ASM Jeff Akins, her supervisor, began treating her poorly in various ways.  For instance, Akins repeatedly criticized her for offering discounts to customers and for visiting the restroom outside of her break time, even though he did not criticize other employees for doing so.  On one occasion, he allegedly altered Plaintiff's timecard to make it appear as if she had been tardy when she had not.  Plaintiff alerted

management about the allegedly altered timecard, and she was not penalized in connection with it.

Plaintiff received a written warning in October 2014 for "boosting" an account. Plaintiff explained at her deposition that an account "boosts" when it is not timely updated to indicate the action that needs to be taken, which occurs when an ASM or representative does not contact the client to renew the account or sell new products. Plaintiff acknowledged at her deposition that boosting an account has always been prohibited. However, Plaintiff testified that other employees had boosted accounts and that she knew of no other employee receiving discipline for doing so.

When ASM Akins met with Plaintiff to discuss the written warning, she refused to sign the warning without a chance to speak with GM Sloan. Plaintiff subsequently received a one-day suspension without pay, signed by Akins, for "extremely unprofessional and disrespectful" behavior during the meeting. Plaintiff admitted at her deposition that she raised her voice during the meeting, but testified that she did so only to make herself heard while protesting Akins's raised voice and use of profanity. She denied having an "outburst." She testified that Akins subsequently apologized to her for raising his voice and speaking disrespectfully. She further testified that Akins told her that he signed the suspension only because GM Sloan wanted him to, after ASM Joseph Penkala told

Sloan that he had overheard Plaintiff yelling at Akins during the meeting.  Plaintiff

testified that other employees have yelled at Akins in front of other employees

without being disciplined, and that another employee called Plaintiff a "bitch" in

front of other employees without being disciplined.

## ANALYSIS

### I.    Motion to Strike [40]

Defendant moves to strike various evidence submitted by Plaintiff on three

separate grounds: (1) because certain evidence is inadmissible; (2) because

Plaintiff submitted certain evidence unsealed, in violation of the Stipulated

Protective Order [39]; and (3) because Plaintiff failed to produce certain evidence

earlier.

First, Defendant moves to strike certain evidence under Federal Rule of

Civil Procedure 56(c)(2), which permits a party to "object that the material cited to

support or dispute a fact [in relation to a motion for summary judgment] cannot be

presented in a form that would be admissible in evidence."  The rule does not

authorize a motion to strike.  Indeed, "[t]he Federal Rules of Civil Procedure do

not require the district court to remove documents other than pleadings from the

record in a case."  *Fox v. Michigan State Police Dept.*, 173 F. App'x 372, 375 (6th

Cir. 2006).  When inadmissible evidence is presented outside of the pleadings, a

court may simply decline to consider it, rather than remove it from the record.  *Id.*

The Court therefore declines to strike any evidence on the grounds that it is inadmissible.

Defendant also moves to strike exhibits 4, 16, and 20 to the affidavit Plaintiff executed and submitted with her response brief, on the grounds that Plaintiff violated the Stipulated Protective Order [39] by submitting these exhibits unsealed.  The Stipulated Protective Order provides that if a party "includes any documents or information covered by this Protective Order" in papers filed in this case, "such documents or information shall be submitted under seal in accordance with the rules of the Court."  Under Local Rule 5.3(b)(2)(A), a stipulated order to authorize sealing must state the authority for sealing; include an identification and description of each item proposed for sealing; state the reason that sealing each item is necessary; state the reason that a means other than sealing is not available or unsatisfactory to preserve the interest advanced by the movant in support of the seal; and have a supporting brief.  The Stipulated Protective Order does not meet these requirements.  Further, the order provides that the Court "shall, if required, make the ultimate determination of whether information is actually entitled to the designation 'Confidential.'"  This provision reflects the reality that the Court "cannot abdicate its responsibility … to determine whether filings should be made available to the public." *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996).  Despite this reality, Defendant offers no explanation as to

why exhibits 4, 16, and 20 "justify court-imposed secrecy." *Id.*  Defendant has

therefore failed to show that the unsealed exhibits must be struck from the record.[2]

Finally, Defendant moves to strike exhibits 1, 3, 5, 6, 10, 11, 14, 24, 25, and

26 to the affidavit Plaintiff executed and submitted with her response brief, on the

grounds that Plaintiff failed to produce the documents earlier.  Federal Rule of

Civil Procedure 26(a) provides that even in the absence of a discovery request, a

party must generally provide all other parties a copy or description of all

documents the party possesses or controls and "may use to support its claims or

defenses, unless the use would be solely for impeachment."  FED. R. CIV. P.

26(a)(1)(A)(ii).  Rule 26(e) requires a party who has made such a disclosure or

responded to a written discovery request to supplement its disclosure or response

"in a timely manner if the party learns that in some material respect the disclosure

or response is incomplete … and if the additional … information has not otherwise

been made known to the other parties."  FED. R. CIV. P. 26(e)(1)(A).  Rule 37(c)

provides that if a party fails to provide information as required by Rule 26(a) or

Rule 26(e), and if that failure was not substantially justified or harmless, the party

may not use that information to supply evidence on a motion.  FED. R. CIV. P.

---

[2] The Court does not condone Plaintiff's counsel's apparent breach of an
agreement to file certain documents only under seal.  But Defendant has not shown
that striking the unsealed exhibits is an appropriate remedy.

37(c)(1).  Rule 37(c) also authorizes additional or substitute sanctions, which may be imposed only on motion and after giving an opportunity to be heard.  *Id.*

Plaintiff appears to argue that her failure to produce the documents earlier was substantially justified because she raised an objection, under Federal Rule of Civil Procedure 26(b)(3)(A), to Defendant's requests for production of documents. Plaintiff ignores the fact that Rule 26(b)(3)(A) applies only when a party requests "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative."  None of the documents in question fall into this category.

Plaintiff also argues that her failure to produce the documents earlier was substantially justified because she was unaware of the documents until after Defendant filed its Motion for Summary Judgment.  Plaintiff offers no evidence, such as sworn testimony in an affidavit, to this effect.  The Court will not excuse Plaintiff's failure to produce documents earlier on the basis of unsupported assertions of counsel in a brief.  *Cf. Garvey v. Montgomery*, 128 F. App'x 453, 462 n.6 (6th Cir. 2005) (quoting *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 325 n. 1 (6th Cir. 1988)) ("[A] motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues.").  Even if the Court assumed that

Plaintiff was unaware of these documents earlier, her failure to discover them earlier may reflect a lack of due diligence, rather than substantial justification.

Plaintiff also suggests that even if her failure to disclose the documents earlier was not substantially justified, it was harmless. As the party facing sanctions, Plaintiff bears the burden of showing harmlessness. *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land In Tenn.*, 821 F.3d 742, 752 (6th Cir. 2016) (citing *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). The Sixth Circuit has adopted a five-factor test from the Fourth Circuit to assess harmlessness (along with substantial justification):

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)). Plaintiff does not discuss these factors. She asserts that all but two of the exhibits "came from [Defendant]'s own computers or were from [Defendant] generated property." With respect to those challenged documents that were produced by the EEOC, Plaintiff asserts that Defendant could have obtained them independently via its own request to the EEOC. The Court concludes that Plaintiff's arguments are too

cursory to meet her burden of showing harmlessness. The Court will strike the exhibits for Plaintiff's failure to produce them earlier.

In sum, Defendant's Motion to Strike is granted only with respect to exhibits 1, 3, 5, 6, 10, 11, 14, 24, 25, and 26 to the affidavit Plaintiff executed and submitted with her response brief. The Court declines to order Plaintiff to pay Defendant's costs as an additional Rule 37 sanction for failure to disclose the documents earlier. The Court also denies Defendant's request for costs under Federal Rule of Civil Procedure 56(h), since the Court is not satisfied that Plaintiff submitted any affidavit or declaration "in bad faith or solely for delay." FED. R. CIV. P. 56(h).

## II.   Motion for Summary Judgment [32]

On a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to

support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A.   Discrimination claims

Plaintiff brings claims for race and gender discrimination under Title VII and ELCRA, claiming that she has been denied promotion at least in part because of her race and/or gender.

Defendant argues that Plaintiff failed to exhaust her administrative remedies on her Title VII gender discrimination claim. Generally, a plaintiff may not bring Title VII claims in federal court without first exhausting her administrative remedies on those claims by including them in a charge filed with the EEOC. *Kuhn v. Washtenaw County*, 709 F.3d 612, 627 (6th Cir. 2013) (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)). Under the Sixth Circuit's "expected scope of investigation" test, a plaintiff's EEOC charge may satisfy the exhaustion requirement with respect to a Title VII claim despite her failure to "check the box" corresponding to that claim or otherwise raise the claim explicitly. *See Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004). "[W]here facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from

bringing suit on that claim." *Id.* (quoting *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 380 (6th Cir. 2002)).

Here, the "sex" box on Plaintiff's EEOC charge is not marked. Plaintiff testified that she believes this omission to be the result of a clerical error because she checked the box, or instructed someone else to do so. In any event, Plaintiff has submitted an e-mail that she sent to an EEOC employee on the same day she submitted her formal EEOC charge. In the e-mail, she made several references to discrimination on the basis of gender and asserted that women were underrepresented in management positions. The e-mail related facts sufficient to prompt the EEOC to investigate a gender discrimination claim. Thus, Plaintiff exhausted her administrative remedies on her Title VII gender discrimination claim.

Plaintiff has explicitly pleaded her discrimination claims under both single-motive and mixed-motive theories. "Mixed-motive claims are easier to prove, but a court is limited in the type of relief that it may grant under a mixed-motive claim." *Hubbell v. FedEx SmartPost, Inc.*, No. 14-13897, 2016 WL 3197492, at *10 (E.D. Mich. June 9, 2016) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 397 (6th Cir. 2008); 42 U.S.C. § 2000e-5(g)(2)(B)). As explained below, Plaintiff has met her summary judgement burden on her single-motive claims. She

has therefore also met her burden on her "easier to prove" mixed-motive claims, which the Court declines to address separately.

Plaintiff argues that she has produced direct evidence of Defendant failing to promote her due to her race and/or gender.  Plaintiff testified that SOM Anthony Belcher made various comments invoking racial stereotypes (e.g., "My inner Black man needs some fried chicken.") and discouraged Plaintiff from associating with other Black employees.  She testified that he made sexist comments as well, including telling her to "grow some balls" and suggesting that her inability to arrive at work earlier due to childcare responsibilities reflected the reason "corporate America" does not promote single mothers.  There is some conflict among published Sixth Circuit decisions regarding whether discriminatory remarks unrelated to a specific employment decision can constitute *direct* evidence that the decision was discriminatory.  *See Chattman v. Toho Tenax America, Inc*., 686 F.3d 339, 347 (6th Cir. 2012) (citing *Blair v. Henry Filters, Inc*., 505 F.3d 517, 525–26 (6th Cir. 2008), *overruled on other grounds by Gross v. FBL Fin. Servs. Inc*., 557 U.S. 167 (2009)).  The decisions that recognized this conflict declined to resolve it because they concluded that the plaintiffs had produced sufficient circumstantial evidence to survive summary judgment even without direct evidence.  *See id.*; *Blair*, 505 F.3d at 526.  As explained below, the Court concludes that Plaintiff has produced sufficient circumstantial evidence to survive summary judgment.  The

Court declines to decide whether Plaintiff has produced direct evidence of discrimination.

To the extent that Plaintiff relies on circumstantial evidence to prove her single-motive Title VII and ELCRA claims, the claims must be analyzed under the *McDonnell Douglas* burden-shifting framework.  *See Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652–53 (6th Cir. 2012).  To establish a prima facie case on a failure-to-promote theory via circumstantial evidence, a plaintiff must show "(1) she is a member of [a] protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied."  *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011) (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005)).  However, "a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion."  *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000).  If Plaintiff establishes her prima facie case, the burden shifts to Defendant to articulate a non-discriminatory reason for failing to promote her, after which the burden shifts back to Plaintiff to show that

Defendant's proffered reason is pretextual.  *Ondricko*, 689 F.3d at 653 (citing *Hazle v. Ford Motor Co*., 628 N.W.2d 515, 521–22 (Mich. 2001)).

Defendant argues that Plaintiff has failed to raise a genuine issue of material fact on her prima facie case because she never applied for a promotion within the Southfield call center via the YP job website.  Plaintiff argues that the *Dews* exception applies because Defendant did not notify her of Southfield ASM openings or tell her how to use the YP job site to apply for them.  Defendant has pointed to no evidence contradicting Plaintiff's testimony that she did not receive instructions on how to view and apply for managerial positions via the YP job site until 2013.  Thus, a reasonable jury could believe Plaintiff's testimony and find that Defendant did not notify her of several available promotions.  If a jury does so, Plaintiff's failure to apply for those promotions will not prevent her from establishing a prima facie case.  *Dews*, 231 F.3d at 1022.

Furthermore, even if a jury finds that Defendant instructed Plaintiff on use of the YP job site before any of the relevant promotions became available, a jury could find that she applied and was considered for at least one promotion.  Plaintiff testified at her deposition that sometime between July and November 2012 (while she was serving as Acting ASM), Belcher and Sieders invited her to e-mail her resume to them for consideration for a Southfield ASM position.  She testified that she subsequently asked Sieders if she could interview for this position, and he

declined to interview her, saying that he had already tentatively chosen someone else to fill the position.[3]  Defendant has produced no evidence that would compel a reasonable jury to reject this testimony.  Thus, a reasonable jury could find that Plaintiff applied for a promotion in a manner that Defendant invited (through two of Plaintiff's supervisors), and that Sieders considered Plaintiff's qualifications for the promotion relative to those of at least one other candidate.

Defendant also argues that Plaintiff has failed to raise a genuine issue of material fact on the final prong of her prima facie case, which requires her to show that she had similar qualifications to those people outside of her protected class(es) who were promoted instead of her.  The analysis of Plaintiff's qualifications within the prima facie "must be conducted independently of [Defendant's] proffered nondiscriminatory reason" for failing to promote her.  *Provenzano*, 663 F.3d at 813 (citing *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005)).  As explained below with respect to the "pretext" stage of the *McDonnell Douglas* framework, the Court concludes that Plaintiff has raised a genuine issue of material fact regarding whether her qualifications were at least equal to those of employees outside of her protected class(es) who were selected for promotion.  She has

---

[3] Sieders's out-of-court statement is not hearsay when offered against Defendant because Sieders was speaking during his employment relationship with Defendant on a matter within the relationship's scope.  FED. R. EVID. 801(d)(2)(D).

therefore also raised a genuine issue of material fact on the qualifications component of the prima facie case.

Because Plaintiff has raised genuine issues of material fact on all prongs of her prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its failure to promote her.  Defendant's proffered nondiscriminatory reason for not promoting Plaintiff is that it considered other candidates more qualified.[4]  Plaintiff bears the burden of showing that Defendant's nondiscriminatory reason for failing to promote her is pretextual.  Plaintiff can raise a genuine issue of material fact at the pretext stage by presenting "evidence of a discriminatory atmosphere in the workplace alongside evidence of at least equal qualifications."  *DeNoma v. Hamilton County Court of Common Pleas*, 626 F. App'x 101, 108 (6th Cir. 2015) (citing *Rachells v. Cingular Wireless Emp. Servs.*, LLC, 732 F.3d 652, 668–69 (6th Cir. 2013); *Bartlett v. Gates*, 421 F. App'x 485, 490–92 (6th Cir. 2010); *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 392–93 (6th Cir. 2009)); *see also Provenzano*, 663 F.3d at 816–17 (citing *Bartlett*, 421 F. App'x at 490–91; *Bender v. Hechts Dept. Stores*, 455 F.3d 612, 627–28 (6th Cir. 2006)) (recognizing that plaintiff could have raised genuine issue of material fact

_____

[4] Defendant also identifies Plaintiff's failure to apply for Southfield ASM position through its job website as a legitimate, nondiscriminatory reason for not promoting her.  As explained above, however, Plaintiff has raised a genuine issue of material fact regarding whether her failure to apply through the YP job site defeats her claim.  *Dews*, 231 F.3d at 1022.

at pretext stage by presenting evidence of equal qualifications alongside "other probative evidence of discrimination").

Plaintiff has produced evidence of a discriminatory atmosphere. Plaintiff testified that SOM Belcher made various comments invoking racial stereotypes (e.g., "My inner Black man needs some fried chicken.") and discouraged Plaintiff from associating with other Black employees. She testified that he also made sexist comments, including telling her to "grow some balls" and suggesting that her inability to arrive at work earlier due to childcare responsibilities reflected the reason "corporate America" does not promote single mothers. Further, another employee of Defendant, Ava Dunn, states in an affidavit that Defendant's management "favored males" and "at meetings would tend to only address the men or [act] more concerned with the needs and situations of the male workers, typically ignoring the females who were similarly situated."[5]

Defendant has not shown that no reasonable jury could conclude that Plaintiff's qualifications equaled those of employees outside of her protected

_____

[5] Defendant argues that Dunn was on leave during Plaintiff's term as Acting ASM and that Dunn therefore cannot have personal knowledge regarding the information in her affidavit. However, Dunn's statements concerning the atmosphere in the Southfield call center outside of the precise timeframe in which Plaintiff served as Acting ASM are relevant to the atmosphere during that timeframe. *Rachells*, 732 F.3d at 665 (quoting *Risch*, 581 F.3d at 392) ("[E]vidence of a ... discriminatory atmosphere is not rendered irrelevant by its failure to coincide precisely with the particular actors or timeframe involved in the specific events that generated a claim of discriminatory treatment.").

class(es) who were selected for promotion. Plaintiff has a bachelor's degree. Defendant approved Plaintiff's participation in AMP and her temporary service as an Acting ASM. Plaintiff testified that during her term as Acting ASM, Defendant set a new goal for sales representatives, asking them to make a new business sale once per week instead of only once per month. She testified that each member of her team met this goal over two consecutive weeks. She testified that GM Sieders and SOM Belcher e-mailed her, praising her for the accomplishment and stating that no other ASM in the company had achieved it.[6]

Defendant has produced evidence of deficiencies in Plaintiff's performance as Acting ASM, but Plaintiff has disputed the accuracy and the significance of much of this evidence. For instance, Defendant has produced evidence that Belcher criticized Plaintiff in a manager's journal (to which Plaintiff lacked access) for failing to complete one-on-one performance review meetings with employees assigned to her team. However, Plaintiff has produced several e-mails from Belcher to her and other ASMs, instructing the other ASMs that they—not Plaintiff—were responsible for completing such one-on-one meetings for Plaintiff's team. Defendant also relies on an e-mail from Belcher to Plaintiff,

---

[6] Sieders's and Belcher's out-of-court statements are not hearsay when offered against Defendant because Sieders and Belcher were speaking during their employment relationships with Defendant and on a matter within the relationships' scope. FED. R. EVID. 801(d)(2)(D).

advising her that among all (Acting) ASMs at the time, she had the lowest rank in new business sales and increasing new revenue. But Plaintiff has testified that Defendant did not have an accurate record of her team's results because she, unlike the permanent ASMs, did not have a personal "line" through which her team's results were reported. She testified that the absence of such a line caused some positive results to be attributed to other ASMs. Defendant has produced no evidence contradicting the alleged inaccuracy in its records of Plaintiff's results.

The evidence in the record concerning the qualifications of promoted employees outside of Plaintiff's protected class(es) would not compel a reasonable jury to find that Plaintiff was less qualified. This is particularly true with respect to Nicholas Beaumont, a white man promoted in November 2012 to an ASM position posted on the YP job site in October 2012. The only support that Defendant offers for its argument that Beaumont was more qualified than Plaintiff is the fact that Beaumont had been employed by Defendant for over four years at the time he was promoted, while Plaintiff had been employed by Defendant for only about one year. Defendant has produced no evidence that Beaumont's performance during those four years was strong. In contrast, Plaintiff has submitted evidence that in the three years period preceding his promotion, Beaumont received a three-day suspension without pay for persistent absences, a written warning for persistent tardiness, an "oral" warning (formalized in a written letter) for persistent absences,

and an "oral" warning for claims results.  Plaintiff has also produced evidence that Defendant attached some importance to disciplinary history when assessing managerial qualifications.  Specifically, she has produced an e-mail in which GM Sieders informed the sales team that employees who had received discipline resulting in a suspension in the previous twelve months were ineligible for participation in AMP.  Plaintiff received no discipline until October 2014, and thus had not received any at the time Beaumont was promoted.  A reasonable jury could find that Plaintiff's qualifications for promotion equaled Beaumont's.

In sum, Plaintiff has produced sufficient circumstantial evidence to survive summary judgment on her single-motive theories.  Plaintiff has raised genuine issues of material fact on all prongs of her prima facie case (as modified under *Dews*).  Further, her evidence of a discriminatory atmosphere, coupled with her evidence of equal qualifications, raises a genuine issue of material fact regarding whether Defendant's proffered nondiscriminatory reason for promoting her is pretextual.  The Court therefore denies Defendant summary judgment on Plaintiff's discrimination claims.

## B.    Retaliation claim

Plaintiff brings a retaliation claim under ELCRA.  To establish a prima facie case on an ELCRA retaliation claim, a plaintiff must show "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the

defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Major v. Village of Newberry*, — N.W.2d —, 2016 WL 4097943 (Ct. App. Mich. Aug. 2, 2016) (quoting *Garg v. Macomb County Community Mental Health Services*, 472 Mich. 263, 273 (Mich. 2005)). "[I]n order to be actionable, an employment action must be materially adverse to the employee—that is, it must be more than a mere inconvenience or minor alteration of job responsibilities." *Chen v. Wayne State Univ.*, 284 Mich. App. 172, 201 (Ct. App. Mich. 2009) (citing *Meyer v. Center Line*, 242 Mich. App. 560, 569 (Ct. App. Mich. 2000)). "Materially adverse employment actions are akin to 'termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id.* at 202 (quoting *Wilcoxon v. Minnesota Mining & Mfg. Co.*, 235 Mich. App. 347, 363 (Ct. App. Mich. 1999)). An ELCRA retaliation plaintiff must show that her protected conduct "was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Thompson v. Department of Corrections*, No. 319668, 2015 WL 1261539, at *6 (Ct. App. Mich. Mar. 19, 2015) (unpublished) (quoting *Barrett v. Kirtland Community College*, 245 Mich. App. 306, 315 (Ct. App. Mich. 2001)).

Defendant argues that the allegedly retaliatory actions were not sufficiently adverse to be actionable.  The Court agrees with respect to several of the actions. First, Plaintiff's seating in an undesirable location and Defendant's requirement that she provide a doctor's letter in support of her request to move out of that location are "mere inconvenience[s]."  *Chen*, 284 Mich. App. at 201.  Second, the written warning Plaintiff received in October 2014 for boosting an account is insufficiently adverse to be actionable, since Plaintiff has produced no evidence that the warning caused her any professional harm.  *Briggs v. Department of Community Health*, No. 227725, 2002 WL 266883, at *1 (Ct. App. Mich. Feb. 19, 2002) (unpublished) (holding two written reprimands regarding plaintiff's job performance not actionable under ELCRA because "receipt of a reprimand, without further consequences, does not constitute a materially adverse employment action"); *cf. Blizzard v. Marion Technical College*, 698 F.3d 275, 290 (6th Cir. 2012) (citing *James v. Metro. Gov't of Nashville*, 243 F. App'x 74, 79 (6th Cir. 2007)) (ruling that a negative employment evaluation is generally not actionable under Title VII if it does not reduce the employee's compensation or potential for professional advancement).  Finally, Plaintiff has not established that ASM Jeff Akins subjected her to actionable harassment—she does not claim that Defendant penalized her in connection with the timecard that Akins allegedly altered, and she has offered no evidence that Akins's criticism of Plaintiff for offering discounts to

customers and for visiting the restroom outside of her break time was particularly severe.

Other actions challenged by Plaintiff, however, are materially adverse. Plaintiff received a one-day suspension without pay for allegedly inappropriate conduct during her meeting with Akins to discuss the October 2014 written warning. This suspension without pay was a materially adverse employment action. *Carr v. Ford Motor Co.*, Nos. 273675, 274251, 2008 WL 1838595 (Ct. App. Mich. April 24, 2008) (unpublished) (citing *Page v. Connecticut Dep't of Public Safety*, 185 F. Supp. 2d 149, 557 (D. Conn. 2002)) (recognizing plaintiff's one-day suspension without pay as materially adverse employment for purposes of ELCRA discrimination claim). Plaintiff has identified other actions that are materially adverse because they allegedly reduced her income, including (1) Defendant's failure to return Plaintiff to account rotation upon her return from leave in June 2013 and (2) Defendant's failure to correct a reduction in Plaintiff's income caused by a customer service representative cancelling a customer's product in January 2016.

Plaintiff has raised genuine issues of material fact regarding whether these materially adverse employment actions were caused by her protected conduct. Defendant has produced evidence that the Marketing Assignment department was responsible for the initial failure to return Plaintiff into account rotation, and that

the department had no knowledge of Plaintiff's EEOC charge. However, Plaintiff testified that shortly after she returned from leave, she informed GM Sieders that she had not been returned into account rotation. Defendant does not dispute that Sieders had the ability to rectify the situation, even if doing so would require contacting the Marketing Assignment department—indeed, it appears that Sieders eventually did so. Nevertheless, Sieders failed to take action to return Plaintiff into account rotation for approximately two months, during which her income was impacted. Plaintiff testified that after the situation was resolved she informed Sieders that she believed Defendant's failure to return her into account rotation was motivated by her EEOC charge, and Sieders—rather than denying the accusation—said he did not want to pinpoint the cause. A reasonable jury could credit this testimony and interpret Sieders's response as a tacit admission that Plaintiff's EEOC charge was a significant factor in his failure to return Plaintiff into account rotation earlier.[7]

Similarly, Plaintiff testified that she spoke to GM Sloan about the January 2016 product cancellation that reduced her income. She testified about their conversation, in part, as follows:

---

[7] Sieders's response is not hearsay when offered against Defendant because Sieders was speaking during his employment relationship with Defendant on a matter within the relationship's scope. FED. R. EVID. 801(d)(2)(D).

> [W]hen he called me into his office he said, "You know, honestly I've thought about ways to make this disappear from you and, you know, if it wasn't for—" and I said, "I know, if it wasn't for my lawsuit basically," and he was like, "You know, with or without it I want to do the right thing, but it's just—everything is being—everything that we do is being looked at like under a magnifying glass and, you know, a couple of years ago I could have made this disappear for you," but basically insinuating that now because I had this lawsuit going he doesn't want to do anything to affect my job or his job.

Viewing Sloan's alleged statements in the light most favorable to Plaintiff, a reasonable jury could infer from them that Plaintiff's lawsuit was a significant factor in Defendant's failure to correct the loss of income caused by the January 2016 product cancellation.[8]

A reasonable jury could also find a causal connection between Plaintiff's EEOC charge and her one-day suspension without pay for allegedly inappropriate behavior during her October 2014 meeting with ASM Akins. Plaintiff has produced evidence from which a reasonable jury could infer that Akins harbored retaliatory animus against Plaintiff. Plaintiff testified that Akins began treating her poorly within a month after she filed her EEOC charge, criticizing her for behavior he did not criticize other employees for and altering her timecard on one occasion to make her appear tardy. Further, in her affidavit, Plaintiff states that roughly six to seven months after she filed her EEOC charge, Akins told her several times that

---

[8] Sloan's statements are not hearsay when offered against Defendant because Sloan was speaking during his employment relationship with Defendant on a matter within the relationship's scope. FED. R. EVID. 801(d)(2)(D).

he disagreed with her decision to file it.[9]  If a jury credited this testimony, along with Plaintiff's testimony concerning her behavior during the underlying meeting, it could reasonably find that Plaintiff's EEOC charge was a significant factor in Akins imposing the one-day suspension.[10]

In sum, Plaintiff has raised genuine issues of material fact on her retaliation claim to the extent that it is premised on her October 2014 suspension, Defendant's failure to return her into account rotation for approximately two months after her return from leave in June 2013, and Defendant's failure to correct a loss of income caused by a product cancellation in January 2016.

CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant's Motion to Strike [40] is **GRANTED** with respect to exhibits 1, 3, 5, 6, 10, 11, 14, 24, 25, and 26 to the affidavit Plaintiff

---

[9] Plaintiff also states in her affidavit that Akins told her several times that he disagreed with her decision to file this suit.  However, this contradicts her testimony at her deposition, during which she testified that she and Akins never discussed this suit.  Plaintiff's deposition testimony does not address whether she and Akins discussed her EEOC charge.

[10] Plaintiff testified that Akins told her he was not responsible for the suspension. Akins's out-of-court statement would likely be inadmissible hearsay if offered against Plaintiff (it could fall under the Rule 801(d)(2)(D) exception only if offered against Defendant).  Even if the statement were admitted, a reasonable jury could discredit it—particularly because the suspension letter was written and signed in Akins's name.

executed and submitted with her summary judgment Response [38], and otherwise

**DENIED**.

      **IT IS FURTHER ORDERED** that Defendant's Motion for Summary

Judgment [32] is **DENIED**.

      **SO ORDERED**.


                              s/Arthur J. Tarnow
                              Arthur J. Tarnow
Dated: August 26, 2016          Senior United States District Judge

32 of 32